IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-cv-00211 |
| | § | |
| GREG ALLEN, IN HIS OFFICIAL | § | |
| CAPACITY AS THE POLICE CHIEF OF | § | |
| THE EL PASO POLICE DEPARTMENT, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Disability Rights Texas respectfully files this Original Complaint for declaratory and injunctive relief and would show:

### I. PRELIMINARY STATEMENT

1. In May 2020, Disability Rights Texas ("DRTx") received a complaint alleging the El Paso Police Department ("EPPD") abused E.C., a person with mental illness, while responding for a civil mental health detention and transportation from E.C.'s home to a facility for mental health evaluation and care in El Paso, Texas.

2. DRTx, as Texas's designated protection and advocacy system ("P&A") and in accordance with its statutory obligations, sought to investigate the circumstances of this reported abuse pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801, *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act ("PADD"), 42 U.S.C. §§ 15001, *et seq.*; and the Protection and Advocacy for Individual Rights

Page 1

Act ("PAIR"), 29 U.S.C. § 794e(a). These three laws are hereinafter collectively referred to as the "P&A Acts."

3. In accordance with these federal laws, DRTx has the authority to access all records of individuals with disabilities for the purposes of investigating incidents of abuse or neglect when DRTx receives a complaint or has probable cause to believe the abuse or neglect occurred. These records include records of a person with a disability who lives in a community setting, including their own home, and those being transported to a facility for mental health evaluation. Accordingly, DRTx requested records related to E.C. who is alleged to have been subject to abuse during the course of the EPPD officers' executing a civil mental health emergency detention order. With the exception of very basic information in the incident report and search warrants, the Defendant is refusing to provide DRTx with the requested records.

4. DRTx seeks declaratory and permanent injunctive relief to prevent the Defendant from continuing to obstruct DRTx's statutory obligation to investigate incidents of abuse and neglect by failing to provide DRTx with access to the records related to a person with disabilities as required by the P&A Acts.

## II.     JURISDICTION

5. This action is authorized by 42 U.S.C. § 1983 to redress the deprivation under color of law rights guaranteed by the P&A Acts, 42 U.S.C. § 10801, *et seq.*; 42 U.S.C. §§ 15001, *et seq.;* and 29 U.S.C. § 794e(a). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. This Court has authority to grant Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendant resides in this district and the events or omissions complained of herein occurred in this district.

## III.     PARTIES

8. Plaintiff Disability Rights Texas is a non-profit Texas corporation authorized by Congressional mandate to protect and advocate for the civil rights of persons with disabilities. DRTx was and is designated by the State of Texas to perform this Congressional mandate pursuant to the PAIMI Act, 42 U.S.C. §§ 10802-03, and the PADD Act, 42 U.S.C. §§ 15001-03. DRTx's main office is located at 2222 West Braker Lane, Austin, Travis County, Texas 78758.

9. Defendant Greg Allen at all relevant times was and is the duly-appointed Chief of Police for the EPPD in El Paso, Texas. Defendant Allen is the duly-appointed administrator of the EPPD and of the EPPD Officers, department employees, and contractors, and is responsible for their training, supervision, and conduct. Defendant Allen was and is responsible for ensuring EPPD complies with federal and state laws. Defendant Allen was and is responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions challenged by this suit. He is being sued in his official capacity as Chief of Police for El Paso, Texas. At all relevant times, Defendant Allen was acting under color of law and as the agent, servant, and, as a matter of law, the official representative of El Paso Police Department, El Paso, Texas. Defendant Allen may be served in his official capacity at the El Paso Police Department headquarters, 911 N. Raynor, El Paso, El Paso County, Texas 79903.

10. Wherever Plaintiff uses the word "Defendant" in this petition, it means Defendant, his agents, employees, successors, and all persons acting in concert with him or at his direction.

## IV.     FACTS

*Texas Civil Mental Health Emergency Detention Warrants and Orders*

11. Texas civil mental health law is heavily dependent upon the use of peace officers, even where an individual with mental illness is not charged with a crime and there is no suggestion

of criminal activity. Specifically, when a magistrate issues an emergency detention warrant finding an individual to be an imminent, substantial risk of serious harm to themselves or others such that they require immediate restraint, peace officers—and only peace officers—are authorized to apprehend the person and transport them to an appropriate mental health facility for evaluation. TEX. HEALTH & SAFETY CODE § 573.012(d) – (e).

12. Similarly, where there is insufficient time or resources to obtain a magistrate's warrant first, Texas civil mental health law authorizes *only* peace officers to respond to community calls for mental health crises and to assess and evaluate individuals to determine whether they believe the person in crisis is a person with a mental illness who, because of that mental illness, is a substantial risk of serious harm to themselves or others unless they are immediately restrained and transported for a mental health evaluation. TEX. HEALTH & SAFETY CODE § 573.001.[1]

13. Under both a magistrate's warrant for emergency detention and a peace officer's warrantless detention, peace officers are serving in a civil capacity—their purpose in responding for a civil mental health emergency detention is not to investigate or detect an alleged crime, but rather to evaluate, assess, detain, and transport individuals with mental illness to an appropriate mental health facility. TEX. HEALTH & SAFETY CODE §§ 573.001, 573.012(d)-(e). Indeed, the civil nature of these duties is highlighted by the fact that the mental health detention and transportation duties of peace officers are not codified with "Law Enforcement and Public Protection" under the Texas Government Code Title 4, Subtitle B, but rather are found in the Texas Mental Health Code,

---

[1] While some localities may involve others in the process of determining whether and where a person will go for mental health evaluation, under Texas law only peace officers can ultimately make the decision to swear out a Peace Officer's Emergency Detention Order and only peace officers can execute a magistrate's emergency detention warrant. TEX. HEALTH & SAFETY CODE §§ 573.001, 573.012(d) – (e). The only other mechanism to initiate the process for involuntary mental health treatment from the community is for an individual's guardian to present them at a mental health facility for assessment and then begin the warrant process. TEX. HEALTH & SAFETY CODE §§ 573.003-573.004. This mechanism requires the individual to have a legal guardian already appointed and the guardian to have the physical ability to detain the ward.

whose stated purposes include "eliminating…the traumatic effect on the person's mental health of…criminal-like procedures." TEX. HEALTH & SAFETY CODE § 571.002(3).

14. In furtherance of these civil mental health duties, all peace officers in Texas are required to complete a forty-hour course on "de-escalation and crisis intervention techniques to facilitate interaction" with people with mental illness within the first two years of their licensure as peace officers. TEX. OCC. CODE § 1701.253(j).

15. Because civil mental health emergency detention services are delegated only to peace officers under the Texas Mental Health Code, contact between law enforcement and individuals in the community experiencing mental health crises is often unavoidable. In the first eight months of 2019 in the City of El Paso alone, officers responded to over 1,000 calls that resulted in officers' placing someone under a civil mental health emergency detention.[2]

16. In light of the large number of civil mental health emergency calls received in the City of El Paso, the EPPD created a Crisis Intervention Team ("CIT") program in 2019 which pairs mental health professionals from the local mental health authority with officers who respond to mental health assistance calls in the community,[3] though the teams are not always available when mental health calls come in. When CIT officers are not immediately available, the responsibility to respond to civil mental health situations in the community falls back to general peace officers with basic de-escalation and crisis intervention training to facilitate interaction with people with mental illness.[4]

---

[2] Mia Villanueva, *El Paso Police Department to brief city council on crisis intervention team*, KFox 14, Sept. 17, 2019, https://kfoxtv.com/news/local/el-paso-police-department-to-brief-city-council-on-crisis-intervention-team.
[3] Emergence Health Network, *Crisis: Crisis Intervention Team* available at https://emergencehealthnetwork.org/crisis/#1585602611454-986806a3-720e.
[4] *See supra* fn. 2.

Page 5

*E.C.'s Civil Mental Health Emergency Detention*

17. It is against this background of civil mental health emergency detention that E.C. came into contact with law enforcement in May 2020 when he experienced a psychiatric crisis. On May 22, 2020, adults familiar with E.C. applied for a magistrate's order of emergency detention stating E.C. was a person with a mental illness who posed an imminent, substantial risk of serious harm to himself or others such that E.C. needed to be immediately restrained and transported to a mental health facility for mental health evaluation.

18. Pursuant to this application, an El Paso magistrate judge issued an emergency detention warrant ordering that an El Paso peace officer "shall take [E.C.] into emergency detention and immediately transport [him] to transfer to the nearest appropriate inpatient mental health facility or…a facility deemed suitable by the local mental health authority for the purposes of obtaining medical treatment and clearance." EPPD officers were subsequently dispatched to E.C.'s home for the purpose of "executing an emergency detention order."

19. When EPPD officers arrived at E.C.'s home to pick him up on the civil mental health emergency detention warrant and transport him to a mental health facility, E.C. was, as should have been expected, imminently dangerous to himself and others – the requirement necessary to be detained on a civil mental health emergency detention warrant. In the midst of E.C.'s psychiatric crisis, he obtained a knife and resisted being removed from his house, attempting to barricade himself in his bathroom.

20. While EPPD patrol officers were attempting to execute the magistrate's civil mental health emergency detention warrant, a CIT officer and mental health specialist were also dispatched and arrived to assist. The CIT mental health specialist determined communication accommodations were necessary and began using those accommodations with E.C. about coming

out of the bathroom when several additional patrol officers arrived and ignored the advice of the CIT mental health specialist to give her time to convince E.C. to come out voluntarily.

21. Instead, three separate EPPD officers attempted to remove E.C. from the bathroom by force—one officer shot E.C. with a firearm, another patrol officer twice bean-bagged E.C., and yet another patrol officer tasered E.C. twice. These weapons caused injuries that ultimately required transporting E.C. directly to a hospital where he required surgery for the gunshot wounds to his hands.

22. Shortly after this incident, DRTx received a complaint and had probable cause to believe that E.C. was abused by EPPD officers when executing the civil mental health emergency detention order. In accordance with its statutory mandate, DRTx opened an investigation to determine if EPPD officers abused E.C. when detaining and transporting him on a civil mental health emergency detention warrant. As part of its investigation, DRTx requested all records from EPPD regarding the incident on or around May 22, 2020 including, but not limited to, the full police report, the dispatch call details and summary, the body camera footage from all officers who responded to the scene, and all emergency detention documents.

*The History and Role of Disability Rights Texas*

23. DRTx's authority and mandate to investigate alleged abuse like that of E.C. comes from Congress's enactment of the P&A Acts after extensive congressional investigations found that existing state systems for monitoring compliance with respect to the abuse and neglect of persons with disabilities vary widely and are frequently inadequate to protect these individuals. To ensure the fox was no longer guarding the henhouse, Congress mandated that each state have a "protection and advocacy system" designed to have independent access to people with disabilities living in various settings and their records in order to detect, prevent, and investigate

abuse and neglect. Because the State of Texas receives federal funds under the P&A Acts, it is required to designate a system that is designed to protect and advocate for the rights of individuals with disabilities and to investigate incidents of abuse and neglect of individuals with disabilities. *See,* 42 U.S.C. § 10801, *et seq.*; 42 U.S.C. § 15001, *et seq.* DRTx has been designated by the State of Texas to be that system.

24. Under the P&A Acts, an "individual with a mental illness" whose abuse DRTx is charged with investigating includes not only a person who is at an inpatient facility, but also specifically includes both a person "who is in the process of being admitted to a facility rendering care or treatment, including persons in the process of being transported to such a facility" and a person with mental illness who lives in a community setting, including their own home. 42 U.S.C. § 10802(4)(B).

25. Congress, in establishing the P&A systems, noted that people with disabilities are more vulnerable to abuse and neglect than the general population. 42 U.S.C. § 10801(a)(1); 42 U.S.C. § 15001(a)(5). So too are they more likely to be victims of police use of force.[5] This use of force against people with mental illness often has devastating and lethal consequences—for example, in the first six months of 2015, a quarter of the people killed by police, 124 people, were experiencing a mental health crisis when they were killed.[6] As in E.C.'s case, in most of these cases, police were not responding to calls related to a reported crime, but rather were responding to calls about a person with mental illness behaving erratically.[7] More than half of these killings

---

[5] U.S. COMM'N ON CIVIL RIGHTS, POLICE USE OF FORCE: AN EXAMINATION OF MODERN POLICING PRACTICES 4 (2018), *available at* https://www.usccr.gov/pubs/2018/11-15-Police-Force.pdf. ("The best available evidence reflects high use of force nationally, and increased likelihood of police use of force against people of color, people with disabilities, LGBT people, people with mental health concerns, people with low income, and those at the intersections of these groups.")
[6] Wesley Lowery, et. al, *Distraught People, Deadly Results*, THE WASH. POST, June 30, 2015, *available at* https://www.washingtonpost.com/sf/investigative/2015/06/30/distraught-people-deadly-results/.
[7] *Id.*

were by police in departments with inadequate training on how to respond to individuals experiencing mental health crises.[8]

26. Nor do the parallels end there—just as Congress found the internal investigations of institutions serving people with disabilities to be lacking when it identified the need for and created the P&A systems, internal affairs investigations of abuse, neglect, and use of force by law enforcement agencies are often wholly insufficient.[9] DRTx fills this void by investigating when individuals with mental illness are alleged to have been abused by peace officers during civil mental health emergency detentions.

27. When Congress mandated P&A systems like DRTx investigate alleged abuse of persons with mental illness and other disabilities, it provided several powerful tools including broad access to records, to ensure P&A systems could effectively investigate abuse.

28. "Records" under the P&A Acts specifically include reports prepared by any staff at any location at which a services, support, or other assistance are provided to individuals with disabilities, and reports prepared by an agency charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such locations. 42 U.S.C. § 10806(b)(3)(A); 42 U.S.C. § 15043(c)(1)-(2); *see also* 42 C.F.R. § 51.41(c); 45 C.F.R. § 1326.25(b). These services and assistance can be provided at any location, including a person with a disability's own home and/or during transport to a mental health facility. 42 U.S.C. § 10802(4)(B)(i)(II), (ii); 42 U.S.C. § 15043(c)(1).

---

[8] *Id*.

[9] According to a 2017 Pew Research Center study, 72% of police officers in a representative survey believed that officers who did a poor job were not held accountable. RICH MORIN, ET AL., BEHIND THE BADGE 5 (2017), *available at* https://www.pewresearch.org/social-trends/wp-content/uploads/sites/3/2017/01/Police-Report_FINAL_web.pdf. Similarly, investigations completed by the United States Department of Justice "have found substantial shortcomings in internal investigations in a number of departments across the country." SAMUEL WALKER, POLICE ACCOUNTABILITY: CURRENT ISSUES AND RESEARCH NEEDS 19 (2007), *available at* https://www.ojp.gov/pdffiles1/nij/grants/218583.pdf.

*DRTx's Request for E.C.'s Records*

29. At the time DRTx made its request for "all records" of E.C. from EPPD, DRTx staff determined E.C. did not have capacity to consent to release of his records and he had no legally authorized representative who could consent. DRTx therefore made its initial request pursuant to the P&A Act provisions governing access to records without consent. *See* 42 U.S.C. § 10805(a)(4)(B); 42 U.S.C. § 15043(a)(2)(I)(ii). Prior to DRTx's filing this suit, E.C. regained capacity to consent to the release of his records and has executed a release of information for DRTx to access the EPPD records from the May 22, 2020 incident. *See* 42 U.S.C. § 10805(a)(4)(A); 42 U.S.C. § 15043(a)(2)(I)(i).

30. In response to DRTx's request, Defendant produced only basic information from E.C.'s incident report and search warrants that were issued after police arrived to detain and transport E.C. pursuant to the magistrate's order for civil mental health emergency detention. EPPD has refused to provide DRTx with any of the remaining records concerning E.C. and his civil mental health emergency detention.

31. Defendant's failure to release the necessary records violates DRTx's federal authority and unduly limits, impairs, and impedes DRTx's ability to complete its statutorily authorized investigation into the alleged abuse of E.C. and fulfill its mandate to protect individuals with mental illness and other disabilities, including those living in their own homes.

### V. CAUSES OF ACTION – VIOLATION OF THE P&A ACTS

32. Plaintiff DRTx restates and incorporates by reference each of the allegations contained in paragraphs 1 through 31 above.

33. The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides relief for persons who, under color of state law, have been deprived of any rights, privileges, or immunities secured under the U.S. Constitution or federal law.

34. DRTx's federal mandate specifically grants DRTx the express authority to access "all records of any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. § 10805(a)(4)(A); *see also* 42 U.S.C. § 15043(a)(2)(I)(i), (J); 29 U.S.C. § 794e(f)(2). Alternatively, the federal mandate also grants access to records of an individual eighteen years or older "who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access; who does not have a legal guardian, conservator, or other legal representative…; and with respect to whom a complaint has been received by the system…." 42 U.S.C. § 10805(a)(4)(B); 42 U.S.C. § 15043(a)(2)(I)(ii), (J).

35. Under this authority DRTx requested all records from EPPD regarding the E.C. civil mental health detention on or around May 22, 2020 including, but not limited to, the full police report, the dispatch call details and summary, the body camera footage from all officers who responded to the scene, and all emergency detention documents.

36. Records related to EPPD's responding to E.C.'s home to detain and transport him on a civil mental health emergency detention warrant are the exact type of information identified in the P&A Acts and regulations as records that are required to be disclosed to DRTx in order for DRTx to conduct an investigation into the possible abuse of a person with mental illness.

37. Defendant, acting under color of law, has refused to provide DRTx with these necessary records which violate the right of Plaintiff, as guaranteed by the P&A Acts, to meaningful and timely access to records of E.C., an individual with mental illness, and its statutory

authority to conduct an investigation. Defendant's policy and actions, unless enjoined, will continue to violate DRTx's right to that information in E.C.'s case and, in the event of future incidents interactions with EPPD during civil mental health emergency detentions, prevent DRTx from being able to complete a thorough investigation into the possible abuse, neglect, or injury of E.C. and other individuals with disabilities.

## VI.  DECLARATORY RELIEF

38. Plaintiff DRTx restates and incorporates by reference herein each of the allegations contained in Paragraphs 1 through 37 above.

39. This Court, pursuant to 28 U.S.C. § 2201, has the authority to declare the rights of any party seeking such a declaration.

40. Plaintiff DRTx requests that, after notice and hearing, this Court enter a declaratory judgment that Defendant's policies, regulations, and practices of continuing to deny DRTx access to EPPD records related to civil mental health emergency detentions and transportation of individuals with disabilities under civil mental health emergency detentions violated and continues to violate the P&A Acts.

## VII. INJUNCTIVE RELIEF

41. DRTx restates and incorporates by reference each of the allegations contained in Paragraphs 1 through 40 above.

42. Pursuant to 28 U.S.C. § 2202, this Court is vested with the authority to grant any further necessary and proper relief based on a declaratory judgment, including the issuance of an injunction, against any adverse party whose rights have been determined by the declaratory judgment.

43. The policies, procedures, regulations, practices, and customs of Defendant violated and continue to violate the rights of DRTx under the P&A Acts to access E.C.'s records. DRTx has no other adequate remedy at law and will be irreparably harmed if the Defendant is permitted to continue to deny access to E.C.'s records.

44. Plaintiff DRTx requests that the Court enter a permanent injunction enjoining Defendant from continuing to deny DRTx access to E.C.'s records as a person with mental illness subject to civil mental health emergency detention and transportation.

## VIII.  PRAYER

WHEREFORE, Plaintiff DRTx respectfully prays that this Court:

(a) Issue a declaratory judgment that Defendant's policies, regulations, and practices of denying DRTx full, complete, meaningful, and timely access to EPPD records related to the civil mental health emergency detention and transportation of individuals with disabilities violated and continues to violate the P&A Acts;

(b) Enter a permanent injunction enjoining the Defendant, his agents, or employees from denying DRTx immediate access to any and all requested records pertaining to E.C.;

(c) Award Plaintiff DRTx its reasonable and necessary attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

(d) Award Plaintiff any other relief that the Court deems just and equitable.

Respectfully submitted,

_____
BETH L. MITCHELL
State Bar No. 00784613
bmitchell@drtx.org
LISA SNEAD
State Bar No. 24062204
lsnead@drtx.org

DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Austin Office)
(512) 454-3999 (Austin Fax)

Page 13

JENNIFER REIF
State Bar No. 24072762
jreif@drtx.org
DISABILITY RIGHTS TEXAS
100 Glenborough St. 600
Houston, Texas 77067
(713) 974-7691 (Houston Office)
(713) 974-7695 (Houston Fax)

ATTORNEYS FOR PLAINTIFF

Page 14