IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:21-cv-00211-DCG |
| | § | |
| PETER PACILLAS, IN HIS OFFICIAL | § | |
| CAPACITY AS THE INTERIM POLICE | § | |
| CHIEF OF THE EL PASO POLICE | § | |
| DEPARTMENT, | § | |
| | § | |
| *Defendant* | § | |

**PLAINTIFF'S OBJECTIONS TO MEMORANDUM OPINION AND ORDER &
UNOPPOSED REQUEST FOR ORAL ARGUMENT**

Plaintiff Disability Rights Texas (DRTx) respectfully requests this Court reconsider its proposed plan to enter summary judgment in Defendant's, El Paso Police Department's (EPPD), favor as discussed in its June 6, 2023 Memorandum Opinion and Order. (ECF No. 44). DRTx also requests this Court to reconsider an opportunity for oral argument on the Motions for Summary Judgment and Responsive Objections In support thereof, DRTx files the following objections to the Court's proposed plan.

**SUMMARY OF ARGUMENT**

On June 6, 2023, this Court issued its memorandum Opinion and Order stating there is no genuine dispute of material fact and the only legal question to be decided in this case is: "[d]oes DRTx have the authority under [the Protection & Advocacy for Individuals with Mental Illness (PAIMI) Act] to obtain EPPD's records of the incident between EPPD and E.C.?" *Disability Rts. Tex. v. Pacillas*, No. EP-21-CV-00211-DGC, 2023 WL 3855082, at *10 (W.D. Tex. June 6, 2023). This Court's decision heavily focuses on the inclusion of the term "facility" in the definition of "abuse" and

1

"neglect," finding DRTx's investigatory authority is bound by these definitions, and therefore, DRTx lacks the authority to investigate the incident as EPPD is not a facility. The Court goes on to find that because DRTx lacks the authority to investigate the incident in question, it cannot access records. *Id.* at *16, fn. 83.

DRTx disagrees with the Court's analysis and maintains that the 2000 PAIMI amendments were meant to expand the authority for P&As to represent people who live in their own homes and concurrently provide P&As with the same authority to investigate abuse and neglect under the PAIMI Act as they have under the Developmental Disabilities Assistance and Bill of Rights (PADD) Act, which does not tie investigations of abuse and neglect to a facility.

Even if this Court continues to find that the PAIMI Act's 2000 amendment expansion does not enable DRTx to investigate the complaint of abuse and neglect at issue, DRTx is still entitled to access EPPD records. In its decision, the Court tied DRTx's records-access authority solely to investigations of abuse and neglect and therefore did not address whether the plain language of the PAIMI Act provides DRTx with independent authority to access EPPD records. The PAIMI Act provides P&As with authority to conduct several distinct activities in order to "protect and advocate the rights of individuals with mental illness," 42 U.S.C. § 10805(a), which authorizes P&A's to access records outside of the context of investigating abuse and neglect. Finally, the types of records requested in this case are the types of records that DRTx can access.

As DRTx meets the federal statutory requirements for accessing the requested records and there are no genuine issues of material facts, DRTx is entitled to the requested declaratory and injunctive relief and this Court should grant DRTx's motion for summary judgment and grant the requested relief.

## OBJECTIONS TO THE COURT'S PROPOSED RULING

This Court's proposed ruling would lead to the incongruous result that P&As could protect, advocate, and investigate use of force by law enforcement on all persons with disabilities, *except for people with mental illness*, a group in Texas that has the nation's third highest rate of death at the hands of police.[1]

### I.    DRTx Has Authority to Investigate Complaints of Abuse and Neglect Even When There is No Nexus to a Facility.

This Court held that DRTx's investigatory authority is bound by the definitions of "abuse" and "neglect" in the PAIMI Act; therefore, it can only investigate incidents of abuse and neglect "allegedly committed by employees of a facility rendering care or treatment or individuals responsible for providing services in a facility rendering care or treatment." *Pacillas*, 2023 WL 3855082 at *17, 19 (internal quotations omitted). DRTx disagrees with the Court's conclusion given the clear intent of Congress to expand the authority of P&A's to protect and advocate for individuals with mental illness who live in the community, including those being transported to facilities.

In 1988, Congress first expanded the responsibilities of the P&As to not only include individuals in facilities, but also those in the process of being admitted and transported to facilities. 42 U.S.C. § 10802(4)(B)(i)(II); Protection and Advocacy for Individuals with Mental Illness Act, Pub. L. No. 100-509, § 3, 102 Stat. 2543 (1988). HHS understood that the expansion to include transportation was not meant to be tied to facilities. *See* 62 Fed. Reg. 53548-01, 53549 (Oct. 15, 1997)(Indicating that P&As "*may also* address issues which arise during transportation to or admission or 90 days after discharge from such facilities" without indicating that the individual also had to be transported by a

---

[1] *Fatal Force,* THE WASHINGTON POST,
https://www.washingtonpost.com/graphics/investigations/police-shootings-database/ (go to filter results; then choose "yes" for "mental illness crisis" and download data to compare states) (last visited June 1, 2023).

provider linked to a facility or discharged to another facility.)  Again in 2000, Congress expanded the responsibilities of the P&As to include individuals with mental illness living in the community, including those living in their own home. 42 U.S.C. § 10802 (4)(B)(iii); S. Rep. 106-196, 26 (1999). The legislative history for those amendments shows Congress' recognition that since the enactment of the PAIMI Act, tremendous advances have allowed persons with mental illness to receive treatment for mental illness in the community; however, "there has not been a mechanism to ensure that [individuals with mental illness living at home] are receiving the care and advocacy services they need." S. Rep. 106-196, 26 (1999). Thus, the amendments "expand[] the authority of the systems to include protecting and advocating on behalf of the rights of individuals with a serious mental illness or emotional impairment who are living in communities and who may be subject to abuse or neglect *or* discrimination …" as the P&As have for those living in facilities.  *Id.* at 25-26 (emphasis added). There is no mention in the legislative history of any requirement of a link to a facility in the expanded P&A authority.[2]

Although Congress failed to remove references to a facility in the PAIMI Act when it expanded authority for P&As to represent people with mental illness living in their own homes, Congress was clear that its intent was to give P&As the same authority to investigate abuse and neglect as exists under the PADD Act. S. Rep. 106-196, 26 (1999)(P&A systems "shall have no less authority to access records to investigate abuse and neglect than is provided to the systems under the [PADD]

---

[2] This Court highlights that the 2000 amendment was not only to allow P&As to work on behalf of people living in their own home who were subject to abuse or neglect, but it was also to ensure persons living at home were not subject to discrimination in housing, health care, employment, or benefits. *Pacillas* 2023 WL 3855082, at *20, fn. 91.  Yet, the Court's Order would suggest that although a P&A could work on behalf of a person living in their own home who was discriminated against, it could only do so if the discrimination occurred at a facility. *Id.*

Act."). Definitions of "abuse"[3] and "neglect"[4] under the PADD Act do not contain the word facility and in no way limit investigations to abuse and neglect occurring at facilities, nor is there a requirement that the alleged perpetrator of the abuse or neglect be a staff member of a facility. 45 C.F.R. § 1326.19.

The clear dictates of the PADD Act allow an investigation into the encounter between E.C. and EPPD where the PADD Act provides P&A organizations with the authority to investigate incidents of "any act or failure to act which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with [] disabilities…" without any nexus to a facility. 45 C.F.R. § 1326.19. Based on Congress' intent for P&As to have the same access to investigate abuse and neglect of individuals with mental illness as is provided for individuals with other disabilities under the PADD Act[5]and by

---

[3] PADD Act Regulations define "abuse" as:

> any act or failure to act which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with developmental disabilities, and includes but is not limited to such acts as: Verbal, nonverbal, mental and emotional harassment; rape or sexual assault; striking; the use of excessive force when placing such an individual in bodily restraints; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations, or any other practice which is likely to cause immediate physical or psychological harm or result in long term harm if such practices continue. In addition, the P&A may determine, in its discretion that a violation of an individual's legal rights amounts to abuse, such as if an individual is subject to significant financial exploitation.

45 C.F.R. § 1326.19.

[4] PADD Act Regulations define "neglect" as:

> a negligent act or omission by an individual responsible for providing services, supports or other assistance which caused or may have caused injury or death to an individual with a developmental disability(ies) or which placed an individual with developmental disability(ies) at risk of injury or death, and includes acts or omissions such as failure to: establish or carry out an appropriate individual program plan or treatment plan (including a discharge plan); provide adequate nutrition, clothing, or health care to an individual with developmental disabilities; or provide a safe environment which also includes failure to maintain adequate numbers of trained staff or failure to take appropriate steps to prevent self–abuse, harassment, or assault by a peer.

45 C.F.R.§ 1326.19.

[5] The PADD Act covers an individual with a developmental disability which substantially limits three

incorporation the PAIR Acts,[6] and where courts' reasoning apply with equal force to both Acts,[7] P&As must have the authority to investigate police encounters with persons with mental illness in the community even when there is not a nexus to a facility. Therefore, after the 2000 PAIMI Act amendments, the authority of a P&A like DRTx is not limited to investigating incidents solely at facilities or with a nexus to facilities.

This was the finding in *Disability Rts. Wash. v. Penrith Farms*, where the court stated that after the 2000 PAIMI Amendments:

> [t]here is no limitation placed on where these investigations take place; rather the investigatory power is couched in terms of protection of individual rights in any context. [P&As are] explicitly empowered to investigate allegations of abuse within a home, which is clearly not a mental health institution or provider of therapeutic or psychiatric services or even a facility of any form or fashion.

No. CV-09-024-JLQ, 2009 WL 777737, at *2 (E.D. Wash. Mar. 20, 2009). The court further stated that a P&A's "role is to protect *individual rights,* not to serve solely as a watchdog for certain types of institutions or facilities." *Id.*

Under the narrow reading of this Court, individuals with a mental illness who choose to live in their own home and receive care and services in the community would not receive the same protections under the PAIMI Act as those who choose to live with others in a board and care home or homeless shelter—again in direct contrast to the clear intent of Congress with the 2000

---

or more major life activities. 45 C.F.R. § 1325.3.

[6] The PAIR Act applies to any person with a disability that limits one of more life activities, 29 U.S.C. §705(9)(B), who does not qualify for P&A services under the PAIMI or PADD Act, 29 U.S.C. §794e(a)(1)(B), and expressly incorporates by reference the same authorities as set forth in the PADD Act. *See* 29 U.S.C. §794e(f).

[7] Legislative history suggests that the two acts are meant to be "consistent." *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 894 F. Supp. 424, 428 (M.D. Ala. 1995), *aff'd*, 97 F.3d 494, 494 (11th Cir. 1996) (*citing* S. Rep. No. 109-99, 1st Sess. at 3 (1986); S. Rep. No. 113-100, 1st Sess. at 24 (1987), *reprinted in* 1987 U.S.C.C.A.N. 781, 803-04); *Advocacy, Inc. v. Horn,* No. A-08-CA-071-LY, 2009 WL 10698769, at *2 (W.D. Tex. March 26, 2009)("The PAIMI Act was modeled after the PADD Act to provide parallel protections for persons with mental disabilities.").

Amendments.  Just as the court in *Penrith Farms* noted that homes are not traditional psychiatric hospitals or providers of therapeutic or psychiatric services, neither are homeless shelters or board and care homes, but both are identified as facilities by the statute. The Court's conclusion that only employees of facilities are subject to investigations of abuse and neglect removes the focus from the protection of individual rights.  Just as the role of the P&A is not to serve as a watchdog for certain facilities, it is not to serve as a watchdog only for employees of institutions or facilities, but rather to protect individual rights against those who abuse individuals with mental illness.

Further, if DRTx is unable to investigate incidents of abuse and neglect of persons in the community or persons being transported to facilities, it does in fact render the Community and Home provisions mere surplusage. *Pacillas,* 2023 WL 3855082, at *21.  In reality, each of the examples provided by the Court, partial hospitalization program, work release programs (including jails and prisons), homeless shelters, and emergency departments, as a reason that the 2000 amendments are not surplusage are all "in the list of covered 'facilities'" available to be investigated before the 2000 amendment's expansion, negating the need for the amendments.  *Id.* at *21.[8]

This is also true for the exemplar provided by the Court related to transportation of an individual who died during transportation by facility staff from one unit of the facility to another unit within the facility. *Pacillas,* 2023 WL 3855082, at *19.  The person in this example remained in the facility the entire time and thus would have been covered "in the list of covered 'facilities." However, individuals with mental illness are often transferred from facility to facility by transporting entities

---

[8] The only examples that are not part of the enumerated categories of 'facility' is the suggestion that it would cover a work release program from jail or prison.  Based on the Court's reasoning in its Order, if the abuse or neglect occurred while the inmate was outside the facility working, that would not be covered; and instead, the only thing that would be covered is when they inmate is back at jail or facility. The other example is a  facility's employees who provide at-home care.  That statement is a misnomer. In-home care is not provided by facility employees but private agencies who must be licensed to provide home health services.

outside of facility staff. Once a person is discharged from a facility, the facility no longer has authority over that individual and therefore does not provide transportation. This is even more true for persons with mental illness who, if determined to be in need of inpatient treatment, must be a danger to themselves or others, leaving police officers or emergency medical technicians conducting the transportation in 99% of the cases.

## II.    DRTx has Authority to Access Records Independent of Its Investigative Authority.

DRTx objects to the granting of summary judgment in favor of the Defendant because the plain language of the PAIMI Act provides DRTx with authority to access the requested records in furtherance of its statutory mandates and independent of its authority to investigate.

The PAIMI Act was enacted for the purpose of establishing P&A systems that will both: 1) "protect and advocate the rights of [individuals with mental illness] through activities to ensure the enforcement of the Constitution and Federal and State statutes;" and 2) "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10801(b)(2)(A),(B). Consistent with this purpose, the allotments provided to P&A systems under the PAIMI Act must be used "to establish and administer systems—which meet the requirement of 10805," "which are designed to—protect and advocate the rights of individuals with mental illness." and "have the capacity to protect and advocate the rights of individuals with mental illness." 42 U.S.C. §§ 10803(2)(A) & 10804(a)(1)(B). Thus, Congress established the P&As as not just investigators of abuse and neglect, but as agencies to protect and advocate for the legal rights of individuals with mental illness under state and federal law, including the Constitutional right to be free from the use of excessive force.

In furtherance of the stated purposes and allotments, the PAIMI Act unambiguously describes a wide range of services to be provided by the P&A systems. *See* 42 U.S.C. § 10805(a).  Only one of

those services is investigating abuse and neglect. 42 U.S.C. § 10805(a)(1)(A).  The plain language of the PAIMI Act goes on to elucidate nine other independent activities that a P&A must have the ability to perform in order to be effective. *See* 42 U.S.C. § 10805(a)(1)-(10). For example, P&As must have the authority to operate independently of any agency in the State that provides treatment or services; have access to facilities; *have access to all records of –any individual who provides consent*; establish an advisory council to advise the P&A on policies and priorities for protecting and advocating for the rights of individuals with mental illness; and establish a grievance procedure for clients and prospective clients of the P&A so individuals with mental illness have full access to the services of the P&A system. 42 U.S.C. § 10805(a)(2),(3),(4), (6), & (9).  Limiting any of these services or activities would reduce DRTx's "authority to the point that it can offer [persons with disabilities] only a fraction of the services to which they are entitled." *Mississippi Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991).[9]  In *Cotton*, the 5th Circuit found that the defendant's limit of the P&A's access to residents only if they or their guardians consent "simply does not square with the broad range of services contemplated by the Act," and instead would thwart a P&A system's ability to provide several distinct services that include education and referral, pursuing legal remedies, investigating abuse and neglect, and establishing a grievance procedure for clients. *Id.* Similarly, limiting the ability of P&As to access records only as a part of abuse and neglect investigations does not square with the broad purposes and range of services to be provided under the PAIMI Act, which explicitly authorizes the accessing of records independent of other P&A activities.

P&A's record access authority is necessary not only to investigate abuse and neglect, but also "to serve its clients, evaluate its client concerns, and determine whether a client has a legal claim,"

---

[9] The Court in *Mississippi Prot. & Advocacy Sys., Inc. v. Cotton* was examining the language of 42 U.S.C. § 6042, a predecessor of the PADD Act which was repealed and replaced on October 30, 2000. 42 U.S.C. § 15043.

including the Constitutional right to be free from excessive force. *Advocacy Inc. v. Tarrant Cnty. Hosp. Dist.*, No. 4:01-CV-062-BE, 2001 WL 1297688, at *4 (N.D. Tex. Oct. 11, 2001)(*citing Robbins v. Budke*, 739 F. Supp. 1479, 1488 (D.N.M. 1990)). At least one court has directly addressed this exact issue, finding P&As are entitled to access all records of any individual who has consented to release of the records independent of investigating abuse and neglect. *Mich. Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897 (E.D. Mich. 2015). In *Flint Cmty. Sch.*, like in this case, the P&A requested records accompanied by authorized releases of information. *Id.* at 899. The defendant in *Flint* alleged that the P&A was not entitled to the records because a prerequisite for requesting records is restricted to only those individuals for whom there is an allegation of abuse or neglect. *Id.* The court categorically rejected the argument finding:

> By the plain terms and structure of [the PAIMI and PADD Act], the "access to records" provisions[10] are not cabined by the "abuse or neglect" provisions,[11] and the right to access records therefore is not restricted in scope to the records only of clients of the plaintiff who have allegedly been abused or neglected.

*Id.* at 907-908. In reaching this conclusion the court relied on *Conn. Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.* where the court reviewed the PADD Act's provision allowing P&As the authority to speak with individuals in order to investigate specific incidents of suspected abuse or neglect, 42 U.S.C. § 15043(a)(2)(B), with the PADD Act's provision that allows P&As generalized access in order to carry out the statutory purpose of protecting the rights of such persons, 42 U.S.C. § 15043(a)(2)(H). 464 F.3d 229, 240–41 (2d Cir. 2006) (Sotomayor, J. writing for a unanimous court). Here again, the defendant tried to argue that the two provisions were interdependent—that a P & A system has the authority to speak to residents only for the purpose of

---

[10] Citing to the PAIMI and PADD Acts investigation provisions, 42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 15043(a)(2)(B)

[11] Citing to the PAIMI and PADD Acts records access provisions, 42 U.S.C. § 10805(a)(4); 42 U.S.C. § 15043(a)(2)(I)(i).

investigating a specific incident of abuse or neglect. *Id.* The Court found that such a reading would render the generalized access to speak to residents meaningless, which statutory construction prohibits.[12] *Id.*

Where the plain language of the PAIMI Act allows access to all records of any individual who provides consent, regardless of whether or not DRTx is investigating abuse or neglect, DRTx has the clear statutory authority to access the records of E.C. in furtherance of its purpose of protecting and advocating for E.C.'s rights.

### III.   DRTx has the Authority to Access the Records Requested from the Defendant.

Although the Court did not reach the question of whether the requested records fall within the scope of the PAIMI Act, the Court affirmed that courts read the PAIMI Act's record-access authority broadly. *Pacillas*, 2023 WL 3855082, at *21 (collecting cases).

The plain language of the PAIMI Act states that P&As shall "have access to all[13] records of *any* individual[14] who is a client of the system if such individual…has authorized[15] the system to have such access." 42 U.S.C. § 10805(a)(4)(A). "Neither the phrase "of any individual" nor the statutory term records requires "records" to be limited to those exclusively produced as part of the care,

---

[12] Although the court was construing the PADD Act's provision "granting access to individuals for interviews, 42 U.S.C. § 15043(a)(2)(H), its reasoning directly applies with equal force to the immediately adjoining parallel access to records provision in subsection (I), and to the congruent provisions under 42 U.S.C. § 10805(a)." *Flint Cmty. Sch.*, 146 F. Supp. 3d at 908.

[13] The ordinary meaning of "all" around the time of PAIMI's enactment is "the entire or unabated amount or quantity of; the whole extent, substance, or compass of; the whole." *All* , OXFORD DICTIONARY (2nd ed. 1989). *Perrin v. United States*, 444 U.S. 37, 42 (1979)(holding that fundamental canons of statutory construction state in the absence of a statutory definition, courts give terms their ordinary meaning); *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 391 (5th Cir. 2002)(stating that it is common practice to consult dictionary definitions to help clarify the ordinary meaning of words).

[14] *See Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022) ("As this Court has repeatedly explained, the word 'any' has an expansive meaning.")

[15] E.C. has provided the appropriate authorization in this case for DRTx to access his records. Signed Release of Information, P. MSJ Ex. N, ECF No. 19.

treatment, or investigation into the abuse or neglect of a particular individual." *Disability Rts. Tex. v. Bishop*, 615 F. Supp. 3d 454, 465 (N.D. Tex. 2022). Instead, the plain language of the PAIMI Act authorizes DRTx to access "the whole extent" of EPPD records related to the incident with E.C. even if they are not directly related to care and treatment or investigation of abuse.

Additionally, the definition of "records" in the PAIMI Act starts with "records *includes…*" 42 U.S.C. § 10806(B)(3)(A) (emphasis added). The "word *include* does not ordinarily introduce an exhaustive list." *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012) (emphasis in original); *see also id.* at 226 ("When a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well."). Therefore, when Congress chose to use the non-limiting word "includes" when discussing the term "records" in the PAIMI Act, it made clear the term "records" in the PAIMI Act is not a complete or exclusive list of covered items.[16] Courts have consistently rejected the argument that "records" under the PAIMI Act only includes the three types of records listed in the definition—reports prepared by staff of a facility, reports prepared by an investigative agency, and discharge records. *See Bishop*, 615 F. Supp. 3d at 463 ( "Neither court strictly limited "records" to the two types of reports and discharge-planning records listed in Section 10806(b)(3)(A). This Court will not either.")(*discussing Ctr. for Legal Advoc. V. Hammons*, 323 F.3d 1262, 1270 (10th Cir. 2003)("records" includes not only patient records, but also hospital records); and *Hartford Bd. of Educ.*, 464 F.3d at 244-45 ("records" includes contact information for individuals with mental illness and their guardians)).

---

[16] *See Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) (explaining that "including" "emphasizes the fact that that which is within is meant simply to be illustrative"); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) ("The text employs the terms 'including' and 'such as' in the preamble paragraph to indicate the 'illustrative and not limitative' function of the examples given ... which thus provide only general guidance ...."); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 528 (5th Cir. 2005)("The word "include' is non-limiting and indicates that [the definition] is [] non-exclusive," making clear that the definition is not limited to the series of terms that follows.).

Because "records" is not exhaustively defined in the PAIMI Act, courts must look to the "ordinary meaning ... as understood at the time of enactment." *Bishop*, 615 F. Supp. 3d at 463-64 *citing Carcieri v. Salazar*, 555 U.S. 379 (2009); *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 275 (1994). EPPD records related to the encounter with E.C. are clearly "something … on which a record has been made, or evidence, knowledge, or information remaining in permanent form…," and are therefore records under the PAIMI Act.[17]

Even if the court determines that the statutory language is ambiguous as to whether records under 10805(a)(4) includes the EPPD records requested here, a court would have to look to the PAIMI regulations which would be accorded *Chevron* deference where Congress expressly delegated rule-making authority to Health and Human Services (HHS), 42 U.S.C. § 10826(b).  *See Bishop,* 615 F.Supp.3d. at 467-68 (analyzing PAIMI regs under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.* 467 U.S. 837 (1984).  The regulations are consistent with the dictionary definition of "records" and state:

> information and individual records…which *shall* be available to [DRTx] under the Act *shall include, but not be limited to*: information and individual records obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records….

42 C.F.R. § 51.41(c)(1)(emphasis added).[18] This interpretation is a permissible interpretation in light of Congress intent to equip P&As to fulfill their mandate by providing them with "unfettered access to 'all records'" of persons with disabilities, a tool "critical to the efficacy of efforts to protect and advocate" for individuals with disabilities. *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1212 (M.D. Ala. 2016) (discussing 42 U.S.C. §§ 10805(a)(4), 10806; see also 42 U.S.C. §15043(a)(2)(I)–(J), (c). This matches

---

[17] In *Bishop* the court looked to the ordinary meaning of the term record from Webster's Third New International Dictionary, Unabridged (1981). *Bishop* 615 F. Supp. 3d at 464.

[18] The use of the words "*include, but not be limited to*" in the regulations also shows that the list provided "in no way intends to limit what a [P&A] system is entitled to under the statute." *Iowa Prot. & Adv. Servs. v. Rasmussen*, 206 F.R.D. 630, 637 (S.D. Iowa 2001).

HHS's interpretive guidance to the original PAIMI regulations that "*records of transporting entities*" are included in "all records" to which P&As have full access. 62 Fed. Reg. 53548-01, 53559-60 (Oct. 15, 1997)(emphasis added).

Reading the term records this way is also consistent with the 2000 amendments in which Congress explicitly wanted P&A systems to "have no less authority to access …than is provided to the systems under the [PADD Act]." S. Rep. 106-196, 26.  The PADD Act authorizes access to all records "prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities." 42 U.S.C. § 15043(c)(1). Further, the PADD Act regulations explicitly identifies "criminal and civil law enforcement agencies such as police departments" as records that P&A systems must have access to. 45 C.F.R. § 1326.25(b)(2).

The records requested in this case are records of EPPD evaluating, assessing, and providing other services. In order to support its mission to "provide services with integrity and dedication,"[19] officers provide arrests/detentions and transportation to jail or mental health treatment facilities as peacefully, harmlessly, and safely as possible.[20] They do so by using de-escalation techniques to help the individual such as: approaching someone with mental illness in an unhurried, calm, and friendly manner; speaking slowly and giving the individual with mental illness time to respond, and using non-threatening body language.[21] These are not only services under the ordinary meaning of the word

---

[19] El Paso Texas Police Department Homepage, https://www.elpasotexas.gov/police-department (last visited June 1, 2023).

[20] Delgado Aff., D. Resp. to MSJ Ex. D, ECF No. 31, at 2; Escobar Aff., D. Resp. to MSJ Ex. E, ECF No. 31, at 3; Gonzalez Aff., D. Resp. to MSJ Ex. F, ECF No. 31, at 2.

[21] EPPD Policy 409, P. MSJ Ex. D, ECF No. 19, Bates COEP647, § 409.1; Delgado Dep., P. MSJ Ex. A, ECF No. 19, p13 ln25 - p14 ln16; Escobar Dep., P. MSJ Ex. C, ECF No. 19, p11 ln5-21; Escobar Aff., D. Resp. to MSJ Ex. E, ECF No. 31, at 2-3; Gonzalez Dep., P. MSJ Ex. B, ECF No. 19, p12 ln6-13, p14 ln10 - p15 ln14; Gonzalez Aff., D. Resp. to MSJ Ex. F, ECF No. 31, at 2.

services,[22] but courts too have found that transportation and arrest are both services of the police.[23] Additionally, EPPD officers' activities fall within assessment[24] where they evaluate persons "with a non-exhaustive list of factors to identify whether [they have] reason to believe an individual is suffering from a mental illness;"[25] "determine if they are a danger to themselves or others;" assess for suicide and mental impairment;[26] and determine whether they can "take them into custody or not."[27]

DRTx is therefore entitled to "all" records EPPD created or obtained when it engaged with E.C. including, but not limited to, the full police report, 911 call recordings, photographs, body camera and other video, all statements or reports given by or to EPPD employees. If "all records— of any individual" did not include EPPD records, the P&A's record access authority would not be consistent with its mandate and purpose—"protect and advocate the rights of such individuals

---

[22] The definition of "service" in a contemporary dictionary at the time the PAIMI regulations were promulgated includes "the action of serving, helping, or benefiting; conduct tending to the welfare or advantage of another…[and] an instance of beneficial or friendly action." *Service*, OXFORD DICTIONARY (2nd ed. 1989).

[23] See, e.g., *Gorman v. Bartch*, 152 F.3d 907, 912-913 (8th Cir. 1998) ("[t]ransportation of an arrestee…[is] a service of the police..."); *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000) ("handling and transporting [a person] to a mental health facility" is a program or service); *Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999) (arrest in case where a person with mental illness was injured is a service); *Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211, 1232-33 (9th Cir. 2014) rev'd in part on other grounds sub nom. *City and Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015) (arrests are a service of the police).

[24] The definition of "assess" in a contemporary dictionary at the time the PAIMI regulations were promulgated was "the action of assessing" which in turn means "[t]o evaluate (a person or thing); to estimate (the quality, value, or extent of), to gauge or judge." Assess, OXFORD DICTIONARY (2nd ed. 1989).

[25] Escobar Aff., D. Resp. to MSJ Ex. E, ECF No. 31, at 2; Gonzalez Aff., D. Resp. to MSJ E F, ECF No. 31, at 2.

[26] Delgado Dep., P. MSJ Ex. A, ECF No. 19, p18 ln17 - p19 ln9, p20 ln17 - p21 ln16; CIT Position, P. MSJ Ex. G, ECF No. 19, Bates COEP653-654; Escobar Dep., P. MSJ Ex. C, ECF No. 19, p14 ln18 - p15 ln9; EPPD Policy 409, P. MSJ Ex. D, ECF No. 19, Bates COEP647 § 409.1; Gonzalez Dep., P. MSJ, Ex. B, ECF No. 19, p16 ln20 – p17 ln1.

[27] Escobar Aff., D. Resp. to MSJ Ex. E, ECF No. 31, at 2; Gonzalez Aff., D. Resp. to MSJ Ex. F, ECF No. 31, at 2.

through activities to ensure the enforcement of the Constitution" 42 U.S.C. § 10801(b)(2)(A)—vitiating Congress' grant of records access. *See Bishop*, 615 F. Supp.3d at 465-66.

If this Court still finds that E.C. is not a person for whom DRTx is able to protect and advocate for under the PAIMI Act, then he must be a person under the PAIR Act, which was enacted to ensure protection and advocacy services are available to individuals with disabilities not covered by the PADD Act or the PAIMI Act,[28] but who shall "have the same general authorities, including access to records and program income, as are set forth" in the PADD Act. 29 U.S.C. § 794e(f). Where, as indicated above, the PADD Act in no way limits investigations or records to facilities, but instead allows for investigations and records at any location where service, support, and assistance is provided, DRTx is entitled to all records EPPD created or obtained when it engaged with E.C.

**CONCLUSION**

A P&A investigating an incident of abuse in a person's home for an individual with a physical disability, intellectual disability, or any other disability covered under the PADD Act or PAIR Act would have access to the records necessary to either investigate the incident or advocate to protect the rights of the individual. It is not logical that an individual with mental illness would not have the same protections. To hold otherwise would leave a significant number of individuals with mental illness in the community without adequate protections—the very concern Congress was addressing with the 2000 amendments to the PAIMI Act.

As this case raises novel questions about the scope of the authority for all P&A organizations. Plaintiff believes that oral argument would be helpful to the Court, in this case, to present legal arguments and fully address crucial points that may not have been adequately conveyed in the written

---

[28] An individual with a disability under the PAIR Act is an individual with "a physical or mental impairment that substantially limits one or more major life activities of such individual" 29 U.S.C. § 794e(f) incorporating 42 U.S.C. §12102 definition of disability.

briefs. Plaintiff Disability Rights Texas respectfully requests this Court to reconsider an opportunity for oral argument on the Motions for Summary Judgment and Responsive Objections.

DATED: June 20, 2023

Respectfully submitted,

BETH L. MITCHELL
State Bar No. 00784613
bmitchell@drtx.org
DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Austin Office)
(512) 454-3999 (Austin Fax)

JENNIFER REIF
State Bar No. 24072762
jreif@drtx.org
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (Houston Office)
(713) 974-7695 (Houston Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF filing system, thus providing notice of electronic filing to the following:

**Via Email**

**Evan D. Reed**
ReedED@elpasotexas.gov
**Sergio M. Estrada**
sergio.estrada@kempsmith.com
**Shelly Rivas**
Shelly.Rivas@kempsmith.com
**Mark Osborn**
mosborn@kempsmith.com

Attorneys for Defendant

BETH L. MITCHELL
ATTORNEY FOR PLAINTIFF

18